UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS BOREN, Acting Regional Director
of the Seventh Region of the National Labor
Relations Board, for and on behalf of the
NATIONAL LABOR RELATIONS BOARD,

      Petitioner,

File No. 1:10-CV-562

v.

HON. ROBERT HOLMES BELL

CONTINENTAL LINEN SERVICES, INC.,

      Respondent.
_____/

# OPINION

This matter comes before the Court on Respondent Continental Linen Services, Inc.'s application for attorney's fees and expenses pursuant to the Equal Access to Justice Act. (Dkt. No. 29.) Petitioner Dennis Boren, Acting Regional Director of the Seventh Region of the National Labor Relations Board (the "NLRB"), opposes the application. For the reasons that follow, CLS's application will be denied.

**I.**

The NLRB filed this action pursuant to § 10(j) of the National Labor Relations Act, 29 U.S.C. § 160(j), seeking preliminary injunctive relief pending the final disposition of a complaint alleging unfair labor practices that was before an Administrative Law Judge ("ALJ") of the National Labor Relations Board. The NLRB sought an injunction requiring

Continental Linen Service, Inc. ("CLS") to, among other things, recognize and bargain collectively and in good faith with the Chicago and Midwest Regional Joint Board, Workers United/SEIU ("Joint Board") as the exclusive collective bargaining representative of the production employees at CLS, to furnish information necessary to the Joint Board's performance of its duties as the exclusive collective bargaining representative, to process grievances filed by the Joint Board, to allow the Joint Board access to the CLS facility, and to meet with the Joint Board to negotiate a successor collective bargaining agreement. (Dkt. No. 1, Compl. 7-8.)

On July 23, 2010, this Court entered an order granting in part and denying in part the NLRB's request for injunctive relief. The Court determined that the NLRB had met its minimal burden of establishing reasonable cause to believe that an unfair labor practice had occurred, but further determined that it would not be just and proper to grant the NLRB all of the injunctive relief it was seeking. (Op. 13.) The Court accordingly granted the NLRB's request for an order requiring CLS to allow the Joint Board access to CLS's employees and plant to process grievances, but denied the NLRB's request for injunctive relief requiring CLS to bargain in good faith and provide information for contract negotiations. (Dkt. No. 20, 07/23/2010 Order.)

On September 15, 2010, the ALJ who conducted the administrative hearing in the underlying case issued a decision and recommended order in which he concluded that the Joint Board was not the employees' § 9(a) representative and recommended dismissal of the

2

administrative complaint. (Dkt. No. 23, Ex. A, ALJ Dec.) The Court subsequently entered an order dismissing the NLRB's petition for preliminary injunction with prejudice pursuant to the parties' stipulation. (Dkt. No. 27, 10/12/2010 Order.) On November 11, 2010, CLS filed its application for attorney's fees and expenses pursuant to the Equal Access to Justice Act.

## II.

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), allows prevailing defendants in civil cases brought by the United States to recover fees and other expenses unless the position of the United States was substantially justified or special circumstances make an award unjust.[1] The EAJA is designed "to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ardestani v. I.N.S.*, 502

---

[1]The EAJA provides in pertinent part:

(d)(1)(A) Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C.A. § 2412(d)(1)(A).

U.S. 129, 138 (1991) (citations omitted). A claimant is entitled to an award of attorney fees[2] and costs under the EAJA if: (1) the claimant is a prevailing party;[3] (2) the government's position was not substantially justified; and (3) no special circumstances make the award unjust. "A request for attorney's fees should not result in a second major litigation." *McQueary v. Conway*, 614 F.3d 591, 602 (6th Cir. 2010) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

**A. Prevailing Party**

The party seeking fees and costs under the EAJA bears the burden of proving that it was the prevailing party. *Reich v. Walter W. King Plumbing & Heating Contractor, Inc.*, 98 F.3d 147, 150-51 (4th Cir. 1996). CLS contends that it qualifies as a prevailing party because it successfully defended against the primary purpose of the NLRB's action, which was to force CLS to recognize and bargain with the Joint Board as the exclusive 9(a) representative. In addition, CLS contends that the stipulated dismissal with prejudice entitles it to prevailing party status. The NLRB contends that CLS was not the prevailing party because the Court granted injunctive relief to the NLRB.

The EAJA does not define "prevailing party" except with regard to eminent domain

---

[2] The EAJA defines "fees and other expenses" to include reasonable attorney fees. 28 U.S.C. § 2412(d)(2)(A).

[3] The EAJA defines "party" to include a corporation whose net worth did not exceed $7,000,000 at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B). Based upon the financial documents submitted by CLS under seal, the Court finds that CLS qualifies as a party for purposes of the EAJA. (Dkt. No. 46, Sealed Doc.)

proceedings, which is not applicable here. *See* 28 U.S.C. § 2412(d)(2)(H). However, the Supreme Court has construed the term "prevailing party" consistently in the various federal fee-shifting statutes where it appears. *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Servs.*, 532 U.S. 598, 602-03 n.4 (2001). For the purpose of federal fee-shifting statutes, a party is a "prevailing party" if (1) it secures a material alteration in the legal relationship of the parties and (2) that alteration is judicially sanctioned. *Id.* at 604-05. To qualify as a prevailing party, one does not have to achieve complete success. A prevailing party is one who has been awarded "some relief" by the court. *Id.* at 603; *see also United States v. Bell*, 602 F.3d 1074, 1087 (9th Cir. 2010) (noting that to qualify as a prevailing party, a litigant must have been awarded some relief by the court).

CLS was clearly awarded some relief by the Court. In its complaint, the NLRB requested an injunction that would require CLS to, among other things, "cease and desist from . . . failing and refusing to recognize and bargain collectively and in good faith" with the Joint Board "as the exclusive collective bargaining representative" of the relevant employee unit, and "failing and refusing to furnish information that is necessary for, and relevant to the Joint Board's performance of its duties as the exclusive collective bargaining representative of the Unit." (Dkt. No. 1, Compl. 7.) The Court explicitly declined to rule on whether the Joint Board or UNITE was the exclusive § 9(a) representative, and denied the NLRB's request for an order requiring CLS to bargain with the Joint Board and to provide information for contract negotiations. (Op. 12-13.) CLS's success on these issues was not

insignificant. These issues were central to the NLRB's § 10(j) petition. CLS prevented Plaintiff from obtaining a material alteration in the legal relationship of the parties. Accordingly, the Court finds that CLS qualifies as a prevailing party.[4]

**B. Substantially Justified**

Although CLS was a prevailing party, it is not entitled to attorney's fees if the NLRB's position was substantially justified. "The government bears the burden of demonstrating that its position was substantially justified." *Pickering v. Mukasey*, 306 F. App'x 246, 248 (6th Cir. 2009) (citing *E.W. Grobbel Sons, Inc. v. NLRB*, 176 F.3d 875, 878 (6th Cir. 1999)). For purposes of the EAJA, the government's position includes both "the position taken by the United States in the civil action [and] the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); *see also Pickering*, 306 F. App'x at 248 ("The government's 'position' comprehends both its underlying action and its litigation position."); *United States v. Cox*, 575 F.3d 352, 357 (4th Cir. 2009) ("EAJA requires us to consider the totality of the government's conduct, including the reasonableness of the government's actions in bringing about the litigation."). The term "substantially justified," as used in the EAJA, means "'justified in substance or in the main' – that is,

---

[4] Because the Court finds that CLS was a prevailing party based on the Court's denial of most aspects of the NLRB's request for injunctive relief, the Court declines to consider CLS's alternative argument that it is a prevailing party by virtue of the NLRB's voluntary dismissal of the § 10(j) action with prejudice. *See Bridgeport Music, Inc. v. London Music, U.K.*, 226 F. App'x 491, 495 (6th Cir. 2007) (declining to address whether a plaintiff's voluntary dismissal with prejudice made the defendant a "prevailing party" for purposes of an award of attorney's fees); *United States v. Alpha Medical, Inc.*, 102 F. App'x 8, 10 (6th Cir. 2004) (same).

justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The government's position would be "substantially justified" if it had a "reasonable basis both in law and fact." *Id.* "[A] position can be justified even though it is not correct, and we believe it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Id.* at 566, n.2. The "substantially justified" standard does not "raise a presumption that the Government position was not substantially justified simply because it lost the case." *Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (quoting *Scarborough v. Principi*, 541 U.S. 401, 415(2004)); *see also United States v. Cox*, 575 F.3d 352, 359 (4th Cir. 2009) ("[W]hen determining whether the government's position in a case is substantially justified, we look beyond the issue on which the petitioner prevailed to determine, from the totality of circumstances, whether the government acted reasonably in causing the litigation or in taking a stance during the litigation. In doing so, it is appropriate to consider the reasonable overall objectives of the government and the extent to which the alleged governmental misconduct departed from them.") (quoting *Roanoke River Basin Ass'n v. Hudson*, 991 F.2d 132, 139 (4th Cir. 1993)).

The NLRB contends that although it did not obtain all the relief it requested, it had a reasonable basis both in law and in fact for bringing the § 10(j) action, as evidenced by the Court's July 23, 2010, opinion and order. In that opinion the Court determined that because the NLRB had a substantial legal theory and produced evidence in support, it had met its

7

burden of establishing "reasonable cause" to believe that an unfair labor practice had occurred. (Dkt. No. 19, 07/23/10, Op. 9.) The Court also determined that it was "just and proper" to grant some limited injunctive relief. (*Id.* at 13.)

While the NLRB's success in obtaining some injunctive relief may be indicative of whether its position was substantially justified, the fact that this Court found for the NLRB (in part) is not necessarily sufficient to establish that its position was substantially justified. *See Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (noting that the fact that a court agreed or disagreed with the government does not establish whether the government's position was substantially justified).

CLS contends that the NLRB's actions were not substantially justified because the position taken by the NLRB throughout the administrative process and in the 10(j) litigation was based on the NLRB's unsupported contention that the Joint Board was the exclusive 9(a) representative. According to CLS, this contention was based on a selective use of evidence, falsified evidence, and a legal theory that was insufficient as a matter of law.

As reflected in the ALJ's opinion, the question of which entity was the bargaining representative at CLS's facility was not straightforward. There was no evidence that any entity had ever been certified by the NLRB as the bargaining representative, although Local 151 had engaged in representational duties for over twenty years. (ALJ Dec. 2.) After 2004, the Joint Board stepped into the role of negotiating and administering the collective-bargaining agreement, (ALJ Dec. 4-5.) The Joint Board handled contract negotiations and

8

decided which grievances to arbitrate without consulting with or obtaining approval from UNITE HERE. (ALJ Dec. 4.) According to the ALJ, the 2005-2010 collective-bargaining agreement provided a "mixed message" regarding the identity of the collective-bargaining representative. (ALJ Dec. 8.) After a full administrative hearing, the ALJ was unable to state with any certitude which entity was the § 9(a) bargaining representative. Although the ALJ concluded that the NLRB failed to meet its burden of showing, by a preponderance of the evidence, that the Joint Board was the § 9(a) bargaining representative, the ALJ specifically cautioned that "[t]his should not be interpreted as encompassing a finding that any particular entity was, or was not, the Section 9(a) representative." (ALJ Dec. 9, n. 7.)

In light of the ambiguous and conflicting evidence, the Court is satisfied that the NLRB's position that the Joint Board replaced Local 151 as the bargaining representative and was not simply acting as the designated agent of Local 151 or UNITE HERE was substantially justified. While there was conflicting evidence, the NLRB submitted evidence that supported the proposition that the Joint Board was the exclusive bargaining representative

CLS contends that in presenting its case, the NLRB ignored critical evidence that did not support its theory, and that the NLRB's selective use of evidence in itself justifies imposition of an EAJA fee award in favor of CLS. The Court disagrees. Both of the cases CLS cites in support of this proposition involve the selective use of evidence by fact-finders rather than by litigants. *See Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004) (holding

9

that where the ALJ was found to have selectively considered the evidence in denying social security benefits, the Commissioner's decision to defend the administrative law judge's denial of benefits was without substantial justification); *E.W. Grobbel Sons, Inc. v. N.L.R.B.*, 176 F.3d 875, 879 (6th Cir. 1999) (holding that in a hearing before the NLRB, the NLRB "is not free to prescribe what inferences from the evidence it will accept and reject, but must draw all those inferences that the evidence fairly demands.")  Neither of the cited cases involved the NLRB as a petitioner in a § 10(j) action.  Petition power under § 10(j) is prosecutorial in nature.  *Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 852 (5th Cir. 2010).  Accordingly, as an advocate rather than an adjudicator, the NLRB was free to emphasize those facts that were most favorable to its position.

   CLS also asserts that the NLRB falsified evidence.  CLS refers to the March 16, 2009, letter the Joint Board sent to CLS following the Joint Board's March 7, 2009, disaffiliation from UNITE HERE.  The letter was signed by the Joint Board's manager, and ostensibly by Barbara Lipsey, Local 151's President.  It came to light during the administrative hearing that someone from the Joint Board had signed Ms. Lipsey's name to the letter.  This Court did not rely on the letter as evidence of Local 151's position because the NLRB notified the Court that the Joint Board had signed Lipsey's name to the letter. (Dkt. No. 6, Pet'r Am. Br. 6, n.6.)  Neither does it appear that the letter was designed to mislead the ALJ in light of the evidence that Ms. Lipsey supported Local 151's disaffiliation from UNITE HERE and the representations in the letter.  Moreover, even if the NLRB did rely on false evidence, the

Court does not find that the NLRB's conduct was sufficient to suggest that the NLRB's position was not substantially justified.

This was a complicated case with substantial conflicting and ambiguous evidence and very little case law directly addressing the situation presented. On review it appears that even if the ALJ correctly concluded that the NLRB failed to show, by a preponderance of the evidence, that the Joint Board was the § 9(a) bargaining representative, the NLRB has shown that it had reasonable cause to believe that it was.

### III.

Although CLS was a prevailing party in this action, the Court is satisfied that the NLRB's position was substantially justified. This is not a case of unjustified governmental action or the unreasonable exercise of governmental authority. *See*, *Ardestani*, 502 U.S. at 138. The Court will accordingly deny CLS's application for attorney's fees and expenses pursuant to the Equal Access to Justice Act.

An order consistent with this opinion will be entered.


Dated: June 8, 2011                             /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE